[Civ. No. 47113. First Dist., Div. Four. Sept. 25, 1980.]

PAT DREW, Plaintiff and Appellant, v.
WILLIAM DRAKE et al., Defendants and Respondents.

**COUNSEL**

Gerald A. Emanuel, Larry J. Ince, John P. Hayes and Mayron, Emanuel, Ince & Hayes for Plaintiff and Appellant.

Jesse F. Ruiz and Wines, Robinson & Wood for Defendants and Respondents.

OPINION

**CHRISTIAN, J.**—Pat Drew appeals from a judgment on demurrer, dismissing for failure to state a cause of action, a complaint against respondents William Drake and Sharon Drake for negligent infliction of emotional distress. The complaint also purported to state a cause of action for wrongful death; appellant does not challenge the judgment insofar as it dismissed that cause of action.

Appellant alleged that she and Eugene Maillet had lived together as "de facto spouses" continuously for three years and that appellant had suffered emotional distress when she witnessed the killing of Eugene Maillet in a vehicular collision caused by respondents' negligence. Respondents demurred, asserting that the complaint did not pass the three-part test of foreseeability established by the California Supreme Court in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (68 Cal.2d at pp. 740-741.)

Emotional distress to a spouse (*Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022]) or a parent (*Archibald* v. *Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723]) witnessing an injury to spouse or child meets the *Dillon* test because it is reasonably foreseeable that a person standing in such close relationship to the injured person may be present and suffer intense distress. No reported decision extends the "close relationship" guideline to include friends or housemates. It has nevertheless been argued that the alleged relationship of housemates might be regarded, at least for the purposes of withstanding a demurrer, as a close relationship. But the Supreme Court used the term "close relationship" as a limitation of potential liability in the context of parent and child. To allow persons standing in a "meaningful relationship" (to use a contemporary colloquialism) to recover for emotional distress resulting in physical injury would abandon the *Dillon* requirement that "[t]he courts...mark out the areas of liability, excluding the remote and unexpected." (68 Cal.2d at p. 741.)

Appellant relies on *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720], disapproved on another point in *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461, 466, footnote 4 [138 Cal.Rptr. 315, 563 P.2d 871], for the proposition that "[t]he emotional attachments of the family relationship and not legal status are those which are relevant to foreseeability." (55 Cal.App.3d at p. 582.) But *Mobaldi* is readily to be distinguished from the present case. In *Mobaldi* the physicians whose alleged malpractice caused catastrophic injury to a child in the presence of the child's foster mother "knew the nature of the relationship" between the child and the foster parent. (*Id.*) Here, in contrast, there was no family relationship and there was no allegation that respondents knew or should have foreseen any other kind of relationship between appellant and the victim of the accident. The court acted correctly when it sustained the general demurrer.

The judgment is affirmed.

Caldecott, P. J., concurred.

**POCHÉ, J.**—I dissent.

On the question of what constitutes a close relationship, the court today draws a bright line distinction between those persons formally married and those not. In particular, a person living with another for three years without benefit of clergy is precluded as a matter of law from recovering for the emotional distress suffered from witnessing the killing of her "de facto" spouse.

Foreseeability of the risk is the issue. The formula for resolution given by the California Supreme Court in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] contains only three elements, two of which the plaintiff undeniably satisfies because her emotional shock resulted from actually observing the fatal accident. Factor three is the only concern: whether the plaintiff and the victim were "closely related, as contrasted with the absence of any relationship or the presence of only a distant relationship." The court affirms the judgment of dismissal following the sustaining of a general demurrer because it finds no "*family* relationship" (italics added) between plaintiff and decedent. In effect the third guideline has been rewritten to require a formal marriage relationship. We are told that unchurched male/female relationships cannot be close and that the tortfeasor could

not foresee that his victim would have a close relationship with a person to whom she was not formally married.

Giving full credit to the rarified air at the appellate level the conclusion reached here today is nevertheless astonishing: my majority colleagues have determined the incidence of cohabitation without benefit of clergy in contemporary California society to be so rare that it can be characterized as "unexpected and remote."[1]

I do not believe that this no marriage-no recovery rule is what the California Supreme Court meant when it ordered the courts of this state to carefully analyze on a case-by-case basis what the ordinary person should have foreseen. (*Dillon* v. *Legg, supra.*)

This insistence on adherence to an older morality as the key to the courtroom was discarded shortly after the close of the Spanish Inquisition and is clearly not the law of this state. (*Dillon* v. *Legg, supra; Marvin* v. *Marvin, supra*, 18 Cal.3d 660; *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720].)[2]

I would reverse the judgment to allow a jury to determine whether and to what extent emotional trauma occurred.

Appellant's petition for a hearing by the Supreme Court was denied November 19, 1980. Bird, C. J., and Newman, J., were of the opinion that the petition should be granted.

---

[1]For evidence to the contrary which at least precludes the judicial notice the majority takes see footnote 1 in *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 665 [134 Cal.Rptr. 815, 557 P.2d 106]: "'The 1970 census figures indicate that today perhaps eight times as many couples are living together without being married as cohabited ten years ago.' (Comment, *In re Cary: A Judicial Recognition of Illicit Cohabitation* (1974) 25 Hastings L.J. 1226.)"

[2]*Mobaldi* is not distinguishable, as the majority opinion suggests, on the basis that the doctor there was aware of the relationship. Justice Thompson's opinion so recognizes in that he refers to this as merely a buttress to the extensively developed foreseeability rationale. (*Id.*, at P. 582.) The point is driven home elsewhere in the opinion: "'[R]easonable foreseeability does not turn on whether the particular [defendant] would have in actuality foreseen the exact accident or loss; it contemplates that *courts*, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen.'" (*Id*, at P. 581.)