[No. A031130. First Dist., Div. Five. Sept. 12, 1986.]

ALEXANDER KRIVENTSOV, Plaintiff and Appellant, v.
SAN RAFAEL TAXICABS, INC., et al., Defendant and Respondent.

**COUNSEL**

Arnold David Breyer, Victoria J. De Goff and De Goff & Sherman for Plaintiff and Appellant.

Lori B. Feldman and Hyde & Drath for Defendant and Respondent.

**OPINION**

**HANING, J.**—Plaintiff Alexander Kriventsov appeals from a judgment sustaining a demurrer without leave to amend and dismissing his complaint

against defendants/respondents San Rafael Taxicabs, Inc., et al., in plaintiff's action for negligent infliction of emotional (and physical) harm resulting from his observation of the hit and run death of his nephew. Plaintiff alleged that he lived with his nephew, and his nephew's parents and grandmother "in the intimate and mutual interdependence of a single home," and that "there existed between Plaintiff and [his nephew] a close, warm and loving relationship, analogous to that of a parent and child." He further alleged that he witnessed defendants' vehicle run over and crush the skull of his nephew and thereafter flee the scene, causing him to give chase to apprehend the fleeing driver.

At issue is whether plaintiff has *pleaded* a relationship between himself and his nephew which is sufficiently close to permit recovery under *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. We conclude that he has, and reverse.

The rules for review of demurrers are well known and need no exhaustive repetition. (See, e.g., *Dale* v. *City of Mountain View* (1976) 55 Cal.App.3d 101, 105 [127 Cal.Rptr. 520].) We emphasize that the allegations of the complaint must be regarded as true, and we must assume that plaintiff can prove the facts alleged.

In *Dillon* v. *Legg, supra,* 68 Cal.2d 728 our Supreme Court held that a mother suffering emotional and physical injuries resulting from her observance of the negligent infliction of injury and death to her child could recover damages from the tortfeasor. Contrary to the position of respondents' herein, however, *Dillon* did not restrict recovery to parents and children, but held that "[s]ince the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis. . . . [N]o immutable rule can establish the extent of that obligation for every circumstance of the future." (*Id.,* at p. 740.)

To assist the courts in determining whether injuries such as those alleged by plaintiff herein are reasonably foreseeable, *Dillon* established three general guidelines: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. . . . [¶] In light

of these factors the court will determine whether the accident and harm was *reasonably* foreseeable. ██ Such reasonable foreseeability does not turn on whether the particular [defendant] as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." (*Id.,* at pp. 740-741.)

Subsequently, in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], the Supreme Court reemphasized *Dillon*'s holding that "an obligation hinging on foreseeability 'must necessarily be adjudicated only on a case-by-case basis. . . . [N]o immutable rule can establish the extent of that obligation for every circumstance in the future.' [Citation.]" Thus, it is clear that the *Dillon* guidelines are not rigid restrictions confined to the precise facts of that particular case, but rather are broader policy principles adopted for the guidance of the courts in dealing with a variety of claims and circumstances. (See, e.g., *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1]; *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063].)

Our focus in the instant case is solely on the relationship between the plaintiff and his deceased nephew—in *Dillon*'s language: "Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 741.) Respondents make no claim that the other *Dillon* guidelines are not satisfied, nor could they on the basis of this record.

In *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720], disapproved on other grounds in *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461, 466, footnote 4, [138 Cal.Rptr. 315, 563 P.2d 871], the relationship of foster mother and foster child was held to be sufficient to permit recovery. In *Ledger* v. *Tippit* (1985) 164 Cal.App.3d 625 [210 Cal.Rptr. 814] an unmarried mother living with the father of her child was permitted to recover for emotional injuries resulting from her observance of an assault on the father which caused his death.

*Drew* v. *Drake* (1980) 110 Cal.App.3d 555 [168 Cal.Rptr. 65] arrived at a contrary conclusion than *Ledger,* denying recovery on the basis that the cohabitant and the decedent whose death she witnessed were not legally married. *Ledger* acknowledged *Drew* and distinguished it, but also noted Justice Poché's dissenting opinion in *Drew.* We agree with the *Ledger* court

that Justice Poché's dissent, although not factually applicable to the instant case, correctly sets forth the analytical process required under *Dillon*.

In *Kately* v. *Wilkinson* (1983) 148 Cal.App.3d 576 [195 Cal.Rptr. 902], a mother and her daughter who witnessed the accident and death of the daughter's best friend were denied recovery in the face of allegations that the children "were best friends and were frequently in each other's company, in each other's homes, and together on social and recreational outings. [The decedent] was treated as a 'filial member' of the [plaintiffs'] family, and [the plaintiff daughter] loved [the decedent], cared for her, and held her life as dear as she would have a natural sister. [¶] The relationship between [the plaintiff mother] and [the decedent] was very much akin to that of mother and daughter. [The plaintiff mother] loved [the decedent] and cared for her and held her life as dear as she did that of her natural daughter." (*Id.,* at pp. 580-581.)

In *Trapp* v. *Schuyler Construction* (1983) 149 Cal.App.3d 1140 [197 Cal.Rptr. 411], two children were denied recovery for emotional injuries resulting from their perception of the drowning death of their cousin in defendant's swimming pool. Their complaint alleged that they were the first cousins of the decedent, with whom they "'had a very close emotional attatchment [*sic*],'" and that they and their cousin "'played together often and had a relationship analagous [*sic*] to a relationship between siblings. Plaintffs [*sic*] loved [their cousin] as they would their own brother.'" (*Id.,* at p. 1141.)

*Kately, Trapp* and *Drew* arose, like the instant case, on demurrers. All three are distinguishable. In *Kately* the relationship was not based on blood, marriage or a functioning family unit. In *Trapp* a blood relationship was present, but the plaintiffs and the decedent did not live together. *Drew* involved unrelated cohabitants. ██ In contrast, plaintiff herein was not only the natural uncle of the decedent, but had been and was living with him in the same household as part of the family unit.

We conclude that these facts satisfy *Dillon*'s close relationship guideline and that the resulting harm was reasonably foreseeable. The membership of many family units extends beyond parents and children to grandparents,[1] stepparents, aunts and uncles, all of whom may be expected to have assumed

---

[1] In *Genzer* v. *City of Mission* (Tex.App. 1983) 666 S.W.2d 116, grandparents who "shared a very close relationship" with their deceased grandchild were permitted to recover for mental anguish resulting from their observance of the negligently caused death of the child. Although the grandparents also received personal injuries from the same negligent conduct which caused their grandchild's death, that factor did not affect the decision, since Texas has the same test for foreseeability as defined by *Dillon*.

responsibilities for child rearing and the attendant emotional relationships with children that normally accompany such circumstances.[2] When a child is negligently injured or killed it is reasonably foreseeable that any of these family members will be equally as near as the mothers in *Dillon*[3] and *Archibald* v. *Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723], and may suffer similar harm.

The judgment is reversed and the matter remanded for further proceedings consistent with this decision.

Low, P. J., and King, J., concurred.

---

[2]In *Leong* v. *Takasaki* (1974) 55 Hawaii 398 [520 P.2d 758, 94 A.L.R.3d 471] a child was allowed to recover for emotional shock resulting from his observation of the negligently caused death of his stepfather's mother who had lived with him for several months and "cared for him as if she were his natural grandmother."

[3]We acknowledge that *Dillon* has been subject to a fair amount of analysis and criticism by legal commentators and other courts. (See, e.g., Diamond, *Dillon* v. *Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries* (1984) 35 Hastings L.J. 477, and articles cited therein; *Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, conc. opn. of Grodin, J., and conc. and dis. opn. of Bird, C. J.) However, Professor Diamond agrees that the close relationship criterion is applicable to foreseeability analysis. (Diamond, *Dillon* v. *Legg Revisited, etc., supra,* at pp. 488-489.)