[No. A033089. First Dist., Div. Three. June 24, 1987.]

GARY COON, Plaintiff and Appellant, v.
MICHAEL JOSEPH et al., Defendants and Respondents.

COUNSEL

German & Siggins, G. Michael German and Peter J. Siggins for Plaintiff and Appellant.

George Agnost and Louise H. Renne, City Attorneys, Burk E. Delventhal and Randy Riddle, Deputy City Attorneys, for Defendants and Respondents.

OPINION

SCOTT, J.—Appellant Gary Coon (appellant) appeals from a judgment of dismissal following an order sustaining a demurrer without leave to amend

to his complaint. By his complaint, he seeks recovery for emotional distress suffered as a witness to the alleged assault of an intimate male friend. We hold that he is not entitled to recover for negligent infliction of emotional distress as a matter of law because he fails to establish the "close relationship" requirement under *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. His complaint fails to allege facts sufficient to constitute any other cause of action, and we therefore affirm the judgment.

## I

### Allegations of Complaint and Procedural History

For purposes of this appeal, we treat as true the allegations of the complaint. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The complaint here alleges as follows. On September 23, 1984, in San Francisco, appellant and a male friend (Ervin) attempted to board a municipal bus of respondent City and County of San Francisco (City). Appellant had been living with his friend for a year, and they had an intimate, stable and "emotionally significant" relationship as "exclusive life partners." The bus driver, respondent Michael Joseph (bus driver), "denied [appellant] entry to the number 19 Polk bus, but allowed [Ervin] onto said bus." Bus driver, in full view and hearing of appellant, verbally abused Ervin and struck his face. When appellant observed the assault on his friend, he suffered great mental and emotional distress. The complaint alleges four causes of action: intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and violation of appellant's civil rights under Civil Code section 51.7.

Respondents City and bus driver demurred to the entirety of the complaint on the grounds that it failed to state any cause of action against them. After appellant's counsel advised the trial court that he elected not to amend the complaint, the court sustained the demurrer without leave to amend.

We conclude that none of the four causes of action allege facts sufficient to constitute any cause of action against respondents bus driver or City.

## II

### Intentional Infliction of Emotional Distress

In *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1], our Supreme Court explained the substantial hurdle a plaintiff, who

is solely a witness to the injury of another, must overcome to withstand a demurrer to a claim for intentional infliction of emotional distress. There, plaintiffs were the parents of a minor who died while confined in a juvenile facility. The complaint alleged that plaintiffs experienced extreme mental and emotional distress when they visited their son after he fell ill with pneumonia. They saw him delirious, screaming in great pain and coughing up blood. The facility refused to allow them to take him to a private physician and forced his mother to leave him although he begged her to stay at his side. After several days he died. The trial court sustained a demurrer to plaintiffs' claims for intentional and negligent infliction of emotional distress. On appeal, the court held that although plaintiffs had stated a claim for negligent infliction of emotional distress, they had failed to state as a matter of law a claim for intentional infliction of emotional distress. The court emphasized that the two torts were completely distinct. (*Id.,* at p. 165, fn. 5.) Intentional infliction of emotional distress requires conduct which is *especially calculated to cause* and does cause the claimant mental distress of a very serious nature. (*Ibid.*) Although it was evident that defendants had caused plaintiffs untold distress, they had not acted with the purpose of causing them emotional distress. (*Ibid.*) The misconduct had been directed primarily at the decedent minor with plaintiffs looking on as helpless by-standers. (*Id.,* at pp. 172-173.) The fact that defendants' conduct had not been especially calculated to cause plaintiffs' distress was fatal to their claim.

The *Ochoa* court averred to a movement towards allowing recovery for the intentional tort by one who is not the direct victim in " 'the most extreme cases of violent attack, where there is some especial likelihood of fright or shock.' " (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d at p. 165, fn. 5, citing Prosser & Keeton on Torts (5th ed. 1984).) *Delia S.* v. *Torres* (1982) 134 Cal.App.3d 471 [184 Cal.Rptr. 787] constitutes one such rare exception. There, the court permitted recovery by the husband of a rape victim against the rapist, one of husband's friends, for intentional infliction of emotional distress. The court reasoned that the rape of one's wife, particularly by a friend, would inevitably result in such humiliation and profound emotional consequences for the husband so as to constitute a personal wrong against him. (*Id.,* at p. 484.)

Here, the complaint alleges that bus driver refused to allow appellant to board the bus and then abused Ervin. It does not allege that bus driver directed any abuse against appellant and therefore, under *Ochoa,* fails to allege conduct "especially calculated to cause" appellant severe distress. The circumstances in *Delia S.* are not present here—the bus driver's conduct did not constitute a personal wrong against appellant. His cause of action for the intentional infliction of emotional distress must therefore fail.

## III

### *Negligent Infliction of Emotional Distress*

In *Dillon* v. *Legg, supra,* 68 Cal.2d 728, our Supreme Court, in allowing recovery by a witness to an injury for negligent infliction of emotional distress, acknowledged the need "to limit the otherwise potentially infinite liability which would follow every negligent act ...." (*Id.,* at p. 739.) Accordingly, the court set forth three factors determinative of whether a witness to an injury may recover for negligent infliction of emotional distress: (1) whether the person was located near the scene of the accident as contrasted with one who was a distance away from it; (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; (3) whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. (*Id.,* at pp. 740-741.)

The third factor is the subject of this appeal: whether appellant has pleaded a sufficiently "close relationship" with Ervin to justify the imputing of foreseeability of the emotional distress to the respondent tortfeasors.

A sufficiently "close relationship" to warrant recovery exists between parent and child (*Dillon* v. *Legg, supra,* 68 Cal.2d at p. 741; *Ochoa* v. *Superior Court, supra,* 39 Cal.3d at pp. 166-167) and husband and wife (see *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 74-75 [137 Cal.Rptr. 863, 562 P.2d 1022]), and between a man and woman who have established a valid common law marriage in a state which allows such marriages (*Etienne* v. *DKM Enterprises, Inc.* (1982) 136 Cal.App.3d 487, 490 [186 Cal.Rptr. 321] [by implication]).

The consequences of the extension of a "close relationship" beyond the parent-child and husband-wife relationship have concerned legal scholars as well as the courts. Keeton and Prosser query: "If recovery is to be permitted, however, it is also clear that there must be some limitation. It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends." (Prosser & Keeton on Torts, *supra,* p. 366.)

With two exceptions,[1] the Courts of Appeal have denied recovery in the absence of a husband-wife, parent-child, or grandchild-grandparent relationship. In *Drew* v. *Drake* (1980) 110 Cal.App.3d 555 [168 Cal.Rptr. 65], plaintiff sought damages for emotional distress upon observing the death in an auto accident of the man with whom she had lived for three years. The court denied plaintiff's claim because she had no legally recognized relationship with the decedent such as *wife and husband* or *parent and child,* and because there were no allegations that defendants knew or should have known of their relationship. The court noted: "No reported decision extends the 'close relationship' guideline to include friends or housemates." (*Id.,* at p. 557.)

*Trapp* v. *Schuyler Construction* (1983) 149 Cal.App.3d 1140 [197 Cal.Rptr. 411] and *Kately* v. *Wilkinson* (1983) 148 Cal.App.3d 576 [195 Cal.Rptr. 902] demonstrate strict adherence to *Drew's* limitations on "close relationship."

In *Trapp,* two minors sought recovery for negligent infliction of emotional distress after witnessing their cousin drown in a swimming pool located on the defendant's property. The complaint alleged that the minors and their cousin "had a relationship analagous [*sic*] to a relationship between siblings." (*Trapp* v. *Schuyler Construction, supra,* 149 Cal.App.3d at p. 1141.) The court denied recovery as a matter of law, stating that a "close relationship" did not include friends or those standing in a "meaningful relationship." (*Id.,* at p. 1142.)

In *Kately,* the court denied recovery for emotional distress by a mother and daughter who had witnessed the death of a child caused by the defendant's defective product. The court stated that although the decedent allegedly had been like a natural member of the family, to permit recovery "would abandon the *Dillon* v. *Legg* requirement that courts mark out the areas of liability excluding the remote and unexpected." (*Kately* v. *Wilkinson, supra,* 148 Cal.App.3d at p. 585.)

█ The inclusion of an intimate homosexual relationship within the "close relationship" standard would render ambivalent and weaken the necessary limits on a tortfeasor's liability mandated by *Dillon.* We view the establishment of a clear and definite standard limiting liability to be of great importance. We adopt the reasoning of *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858], where the court

---

[1]*Kriventsov* v. *San Rafael Taxicabs, Inc.* (1986) 186 Cal.App.3d 1445 [229 Cal.Rptr. 768] [uncle-nephew]; *Ledger* v. *Tippitt* (1985) 164 Cal.App.3d 625 [210 Cal.Rptr. 814], discussed *infra.* We view the relationship of mother and foster child in *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720] as a parent-child relationship.

denied the extension of liability for loss of consortium to the parent-child relationship. The court explained that social policy rather than logic was the basis of its decision: " '[N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere. In delineating the extent of a tortfeasor's responsibility for damages under the general rule of tort liability (Civ. Code, § 1714), the courts must locate the line between liability and nonliability at some point, a decision which is essentially political.' " The court also stated: "We cannot ignore the social burden of providing damages ... merely because the money to pay such awards comes initially from the 'negligent' defendant or his insurer. Realistically the burden of payment of awards ... must be borne by the public generally in increased insurance premiums or, otherwise, in the enhanced danger that accrues from the greater number of people who may choose to go without any insurance. ..." (*Id.,* at pp. 446-447.)

To include the "emotionally significant," "stable," and "exclusive" relationship pled by appellant as a "close relationship" within the meaning of *Dillon* v. *Legg* would invite inconsistent results because recovery would be dependent upon the personal, completely subjective viewpoints of the trier of fact. For this reason, among others, California courts have denied liability for loss of consortium absent a legal husband-wife relationship at the time of the occurrence of the injury. (*Ledger* v. *Tippitt, supra,* 164 Cal.App.3d 625, 633-640 [recovery denied even though parties had attempted to marry, lived together, and plaintiff had borne the child of the decedent]; *Lieding* v. *Commercial Diving Center* (1983) 143 Cal.App.3d 72, 76 [191 Cal.Rptr. 559] [recovery denied where injured party asked plaintiff to marry him before accident and they married after accident]; *Tong* v. *Jocson* (1977) 76 Cal.App.3d 603, 605 [142 Cal.Rptr. 726] [recovery denied where parties engaged before accident and married after accident]; contra *Butcher* v. *Superior Court* (1983) 139 Cal.App.3d 58 [188 Cal.Rptr. 503, 40 A.L.R.4th 539].)

In *Ledger* v. *Tippitt, supra,* 164 Cal.App.3d 625, the court held that plaintiff's complaint failed to state a cause of action for loss of consortium but did state a cause of action for negligent infliction of emotional distress. Although appellant relies upon *Ledger,* we find that case not controlling here. Plaintiff in *Ledger* alleged that defendant had stabbed the decedent in front of her and that decedent had bled to death in her arms. Plaintiff and decedent had lived together for two years and twice had attempted to marry. She had borne their son whom she was holding at the time of the stabbing. The court held that plaintiff should not be denied recovery merely because their marriage license had never been recorded. (*Id.,* at p. 646.) It stated: " '[There is no] more fundamental family relationship than one

which is created when two parents establish a home with their natural child.' " (*Id.,* at p. 648.)

Without commenting on the soundness of *Ledger,* we find it inapposite. The complaint here does not allege facts establishing a "de facto" marital relationship recognized in *Ledger.* Nor could such allegation be made because appellant and Ervin are both males and the Legislature has made a determination that a legal marriage is between a man and a woman. (Civ. Code, § 4100; see *McClure* v. *Donovan* (1949) 33 Cal.2d 717, 728 [205 P.2d 17]; *Hinman* v. *Department of Personnel Admin.* (1985) 167 Cal.App.3d 516, 526 [213 Cal.Rptr. 410].) Accordingly, appellant has failed to state a cause of action for negligent infliction of emotional distress.

## IV

### *Appellant's Claims of Negligence and Civil Rights Violations*

These claims do not merit extensive discussion. ■ Appellant claims that the complaint states a cause of action for negligence in his favor for violation of Civil Code section 2100. That section codifies the duty of "utmost care" owed by a commercial carrier to provide "safe carriage" to its passengers. Here, the verified complaint states that bus driver refused to allow appellant to board the bus; accordingly appellant never became a passenger, the duty of care codified by section 2100 never arose in favor of appellant, and respondents never breached any duty of safe carriage owing to passengers with respect to appellant.

The factual circumstances and issues in *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780 [221 Cal.Rptr. 840, 710 P.2d 907], cited by appellant, are not relevant here. There, the court held that a transit authority owes a duty of care to its passengers to protect them from assaults from fellow passengers under Civil Code section 2100. (*Lopez, supra,* at p. 791.) Here, the complaint does not allege, as stated above, that appellant was a passenger or that he was assaulted.

■ As to appellant's claim of violation of civil rights, a brief review of the statute upon which he relies—Civil Code section 51.7—establishes he has no claim. That section provides, inter alia, that all persons have the right to be free from any violence, intimidation or threat thereof "committed against their persons" because of race, religion, sex or sexual orientation. The unambiguous language of this section gives rise to a cause of action in favor of a person against whom violence or intimidation has been committed or threatened. The complaint establishes that no violence or intimidation was committed or threatened against appellant's person and

thus no cause of action exists in his own right. Following appellant's argument, any person would have the right to recover damages for himself or herself whenever the rights of any other human being of similar race, religion, sex, or sexual orientation were threatened. Such intent of the Legislature cannot be reasonably inferred.

For these reasons, we affirm the order of the trial court sustaining the demurrer to the complaint and the judgment of dismissal.

Barry-Deal, J., concurred.

**BARRY-DEAL, J.**—For the reasons stated in part III of the majority opinion, I concur in the decision to restrict the definition of a "close relationship" under *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.2d 1316] to a marital relationship meeting the legal requirements imposed by our Legislature, as well as to the parent-child and other close relationships identified in the lead opinion. I write separately to emphasize that it is the obligation of the Legislature to examine the question whether people in committed relationships, both heterosexual and homosexual, other than those meeting the legal requirements for marriage, should be accorded recognition giving rise to all, or selected, legal rights traditionally reserved to married persons.

Historically, the Legislature has had the full authority to prescribe rules governing the marital relationship, including its creation and the rights and obligations incident to it. (*McClure* v. *Donovan* (1949) 33 Cal.2d 717, 728 [205 P.2d 17].) For this reason our statutes control the validity of marriages without regard to the common law. (*Norman* v. *Thomson* (1898) 121 Cal. 620, 621 [54 P. 143].) Legislative regulation of marital status is warranted because the creation and enforcement of rights incident to it involve complex questions of public policy.[1] (*Kelsey* v. *Miller* (1928) 203 Cal. 61, 91 [263 P. 200]; *Estate of Gregorson* (1911) 160 Cal.21, 24 [116 P. 60]; see *Crouch* v. *Crouch* (1946) 28 Cal.2d 243, 251 [169 P.2d 897].)

The Legislature has determined that only a man and a woman can enter into a valid marriage (Civ. Code, § 4100 [the constitutionality of which is not challenged in this appeal]), and that a common law marriage, that is, a mutual assumption of marital rights, duties and obligations without compliance with licensing and solemnization requirements, cannot be contracted

---

[1] Clark, The Law of Domestic Relations in the United States (1968) points out that the assertion by various state legislatures of a broad, plenary power over the marital status is clearly constitutional: "It falls directly within the police power of the various constitutions, since regulation of marriage is essential for the public welfare. For this reason many cases have upheld the legislature's power as against constitutional attack." (*Id.,* at § 2.2, p. 35.)

in California. (*Ibid*.; see former Civ. Code, § 55, as amended in 1895.)[2] Our Supreme Court has held that certain rights and obligations *between* cohabitants may be judicially regulated based on principles of contract and equity (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106]), but as in the case of any other unmarried persons such principles do not apply to third persons who are not parties to the nonmarital relationship, such as the defendants here.

I believe that the question of extension of marital rights and benefits beyond the legally recognized marital relationship against third parties and governmental entities is a matter of public policy demanding the attention of the Legislature. These rights and benefits include recognizing the right to bring tort actions for wrongful death and for negligent infliction of emotional distress as well as the right to employee benefits such as family health care, group insurance and unemployment benefits. (See Rivera, *Our Straight-Laced Judges: The Legal Position Of Homosexual Persons In The United States* (1979) 30 Hastings L.J. 799, 874.) Because it is my view that the decision to extend these and other rights to committed nonmarital relationships is a matter for the Legislature,[3] it is my opinion that a judicial extension of such rights would undermine the legislative function and would postpone, if not excuse, legislative responsibility.

**WHITE, P. J.**—I dissent from the majority's holding that an intimate homosexual relationship cannot be a significant relationship as a matter of law for stating a cause of action for negligent infliction of emotional distress; however for the reasons stated below I still must concur in the judgment.

In order for a plaintiff to recover for negligent infliction of emotional distress, the *court* must determine that the accident and injuries were reasonably foreseeable not to the particular defendant, but to the ordinary man. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 922 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; *Dillon* v. *Legg, supra,* 68 Cal.2d 728, 741.) In determining whether a defendant should reasonably

---

[2] However, the Legislature moderated its ban on common-law marriage by recognizing certain marital rights of parties to a putative marriage, defined in *Estate of Foy* (1952) 109 Cal.App.2d 329, 331 [240 P.2d 685], as "a matrimonial union which has been solemnized in due form and good faith on the part of one or of both of the parties but which by reason of some legal infirmity is either void or voidable." (See The Family Law Act, Civ. Code § 4000 et seq., eff. Jan. 1, 1970, and specifically §§ 4452, 4455.)

[3] In addition to the issue raised by the instant case, the Legislature also ultimately must legislate on other complex and sensitive questions raised by medical and scientific developments affecting familial relationships, including *in vitro* fertilization, surrogate pregnancies, and the storage and use of human embryos. (See generally, 25 J. Fam. L. (1986) *Annual Survey of Family Law*, and, e.g., p. 223.)

foresee the injury to plaintiff, the courts shall take into account such factors as the following: "(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with the absence of any relationship or the presence of only a distant relationship." (*Dillon, supra,* at pp. 740-741.)

The majority only relies on the third criteria for determining that appellant failed to state a cause of action. The majority looks at different cases for the type of significant relationship which is required to state a cause of action for negligent infliction of emotional distress and states: "The inclusion of an intimate homosexual relationship within the 'close relationship' standard would render ambivalent and weaken the necessary limits on a tortfeasor's liability mandated by *Dillon.* We view the establishment of a clear and definite standard limiting liability to be of great importance." *Dillon* did not mandate the limits on a tortfeasor's liability under the three factors stated above. "It is important to remember that the factors set forth in *Dillon* were merely guidelines to be used in assessing whether the plaintiff was a foreseeable victim of the defendant's negligence. As we stated in *Dillon*: 'We are not now called upon to decide whether, in the absence or reduced weight of some of the above factors, we would conclude that the accident and injury were not reasonably foreseeable and that therefore defendant owed no duty of care to plaintiff. In future cases the courts will draw lines of demarcation upon facts more subtle than the compelling ones alleged in the complaint before us.'" (*Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 170 [216 Cal.Rptr. 661, 703 P.2d 1].)

Contrary to the majority's statement that "the establishment of a clear and definite standard limiting liability" is of great importance, the California Supreme Court in *Ochoa* approves a more flexible approach to the *Dillon* guidelines. *Ochoa* examined *Dillon's* contemporaneous observation requirement and permitted recovery to a mother who had seen her child's health deteriorate through neglect while the child was in a juvenile hall infirmary which resulted in his death when she was not present. "The fear that a less than strict application of the *Dillon* factors will result in 'infinite liability' should not prevent courts from allowing plaintiffs to go forward when their shock and trauma stems from their sensory perception of defendant's conduct and their loved one's injury, ... In *Dillon* defendant argued that an otherwise meritorious claim should be barred out of a fear that there would be an increase in suits as well as fraudulent claims. We repeat here our response to such a contention: ' "[We] should be sorry to

adopt a rule which would bar all such claims on grounds of policy alone, and in order to prevent the possible success of unrighteous or groundless action. Such a course involves the denial of redress in meritorious cases, and it necessarily implies a certain degree of distrust, which [we] do not share, in the capacity of legal tribunals to get at the truth in this class of claim." ' " (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, 171.) I therefore disagree with the majority that liability should be denied to all homosexual relationships on the grounds of policy alone.

The majority states: "To include the 'emotionally significant,' 'stable,' and 'exclusive' relationship pled by appellant as a 'close relationship' within the meaning of *Dillon* v. *Legg* would invite inconsistent results because recovery would be dependent upon the personal, completely subjective viewpoints of the trier of fact." In *MacGregor* v. *Unemployment Ins. Appeals Bd.* (1984) 37 Cal.3d 205 [207 Cal.Rptr. 823, 689 P.2d 453], wherein the court held that when a worker leaves her employment to accompany her "nonmarital partner" to another state in order to maintain the familial relationship they have established with their child, she voluntarily leaves work with good cause within the meaning of the statute governing eligibility for unemployment insurance benefits. In *MacGregor* the court recognized that a holding that would preclude benefits in the absence of a legal marriage relationship would "avoid the difficulties and dangers which would accompany a requirement that administrative agencies and courts make individualized determination of the 'true nature' of intimate personal relationships." (*Id.,* at p. 213.) The court in *MacGregor* in holding that the absence of legally recognized marriage did not preclude an individual from receiving unemployment compensation benefits stated: "This court considered similar arguments in *Norman* v. *Unemployment Ins. Appeals Bd.* [1983] 34 Cal.3d 1 [192 Cal.Rptr. 134, 663 P.2d 904]. There, although we declined to find good cause based solely on a nonmarital relationship in which marriage was not imminent, we explicitly declined to hold that a legal marriage is a prerequisite for establishing good cause where other indices of compelling familial obligations exist. [Citation.] Today we reaffirm the principle that the lack of a legally recognized marriage does not prevent a claimant from demonstrating that compelling familial obligations provided good cause for leaving employment." (*Id.,* at p. 213.)

Often the closeness of a relationship is analyzed in order to determine whether a plaintiff may recover for negligent infliction of emotional distress when plaintiff witnesses a particular person injured. In *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720] (disapproved on other grounds in *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461, 466, fn. 4 [138 Cal.Rptr. 315, 563 P.2d 871]) the relationship of foster mother and foster child was held to be sufficient to permit recovery. In

*Kriventsov* v. *San Rafael Taxicabs, Inc.* (1986) 186 Cal.App.3d 1445 [229 Cal.Rptr. 768], the court held an uncle had stated a cause for negligent infliction of emotional distress when he witnessed his nephew killed, after considering the closeness of the relationship between uncle and nephew.

For our purposes an important case is *Ledger* v. *Tippitt* (1985) 164 Cal.App.3d 625 [210 Cal.Rptr. 814], wherein the court held that an unmarried mother living with the father of her child stated a cause of action for negligent infliction of emotional distress as a result of her observation of an assault on the father which caused his death.[1] In *Ledger* the court felt that Justice Poché in his dissent in *Drew* v. *Drake* (1980) 110 Cal.App.3d 555, 558 [168 Cal.Rptr. 65], correctly set forth the analytical process required under *Dillon.* (*Ledger, supra,* at pp. 647-648; *Kriventsov* v. *San Rafael Taxicabs, Inc., supra,* at pp. 1448-1449.) Since I also feel that Justice Poché's dissent sets out the correct standard for evaluating the third guideline set out in *Dillon,* I quote the short dissent in full. "On the question of what constitutes a close relationship, the court today draws a bright line distinction between those persons formally married and those not. In particular, a person living with another for three years without benefit of clergy is precluded as a matter of law from recovering for the emotional distress suffered from witnessing the killing of her 'de facto' spouse. [¶] Foreseeability of the risk is the issue. The formula for resolution given by the California Supreme Court in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 20 A.L.R.3d 1316] contains only three elements, two of which the

---

[1]On September 19, 1985, the California Supreme Court granted review in the published case of *Garcia* v. *Superior Court* (June 18, 1985, E001780) wherein the Court of Appeal held that "unmarried cohabitants can state a cause of action for negligent infliction of emotional distress if the plaintiff can demonstrate that the relationship is both stable and significant." On May 1, 1986, the review of the matter was dismissed by the Supreme Court as improvidently granted and the matter was remanded to the Court of Appeal. Rule 29.4(c) of the California Rules of Court provides: "The Supreme Court may dismiss review of a cause as improvidently granted and remand the cause to the Court of Appeal. The order of dismissal and remand shall be sent by the clerk to all parties and to the Court of Appeal. On filing of the order in the Court of Appeal, the decision of the Court of Appeal shall become final and the clerk of the Court of Appeal shall issue a remittitur forthwith." On May 16, 1989, the Court of Appeal issued its remittitur in *Garcia.* The Advisory Committee Comment to rule 29.4 provides: "If the Supreme Court dismisses review as improvidently granted under subdivision (c), the cause is restored *to the posture it had before the Supreme Court granted review: the decision of the Court of Appeal is final.*" (Italics added.) However, since the California Supreme Court did not order the opinion to be published when it dismissed review as improvidently granted and remanded the case to the Court of Appeal, this appeal although final among the parties may not be cited since it is no longer regarded as a published opinion. Once review is granted the opinion of the Court of Appeal, may not be published. (Rule 976(d), Cal. Rules of Court.) Under rule 29.4(c) the Court of Appeal only has the power to issue the remittitur, but may not decide whether the opinion is to be published. Still pending before the California Supreme Court is a case which denied recovery to cohabitants for negligent infliction of mental distress. (*Elden* v. *Sheldon* (1985) 164 Cal.App.3d 745 [210 Cal.Rptr. 755], review granted Apr. 25, 1985 (L.A. 32063).)

plaintiff undeniably satisfies because her emotional shock resulted from actually observing the fatal accident. Factor three is the only concern: whether the plaintiff and the victim were 'closely related, as contrasted with the absence of any relationship or the presence of only a distant relationship.' The court affirms the judgment of dismissal following the sustaining of a general demurrer because it finds no *'family* relationship' (italics added) between plaintiff and decedent. In effect the third guideline has been rewritten to require a formal marriage relationship. We are told that unchurched male/female relationships cannot be close and that the tortfeasor could not foresee that his victim would have a close relationship with a person to whom she was not formally married. [¶] Giving full credit to the rarified air at the appellate level the conclusion reached here today is nevertheless astonishing: my majority colleagues have determined the incidence of cohabitation without benefit of clergy in contemporary California society to be so rare that it can be characterized as 'unexpected and remote.' [¶] I do not believe that this no marriage-no recovery rule is what the California Supreme Court meant when it ordered the courts of this state to carefully analyze on a case-by-case basis what the ordinary person should have foreseen. (*Dillon* v. *Legg, supra.*) [¶] This insistence on adherence to an older morality as the key to the courtroom was discarded shortly after the close of the Spanish Inquisition and is clearly not the law of this state. (*Dillon* v. *Legg, supra; Marvin* v. *Marvin, supra,* 18 Cal.3d 660; *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573.) [¶] I would reverse the judgment to allow a jury to determine whether and to what extent emotional trauma occurred." (*Drew* v. *Drake, supra,* at pp. 558-559, fn. omitted.)

Thus, the majority's statement "to include the 'emotionally significant,' 'stable,' and 'exclusive' relationship pled by appellant as a 'close relationship' invites inconsistent results because recovery would be dependent upon the personal, completely subjective viewpoints of the trier of fact" may be true but the courts have been determining for some time whether a particular relationship constitutes a significant one. The closeness of a relationship for the negligent infliction of mental distress goes to foreseeability and is thus an issue for the court to decide. " 'The courts thus mark out the areas of liability, excluding the remote and unexpected.' " (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 922.) Since homosexuals cannot marry (Civ. Code, § 4100), under the majority's decision, they are precluded from ever recovering for negligent infliction of emotional distress. However, recovery for negligent infliction of emotional distress is not limited to couples that are married. (*Ledger* v. *Tippitt, supra,* 164 Cal.App.3d 625.) When marriage is not a requirement for recovery, there is no reason to distinguish between heterosexual relationships and homosexual relationships in determining whether the relationship is significant and stable. (Note, *Marital Status Qualifications: Protecting Homosexual and Heterosex-*

*ual Cohabitors* (1986) 14 Hastings Const.L.Q. 111, 137-139; see *Butcher* v. *Superior Court* (1983) 139 Cal.App.3d 58, 70 [188 Cal.Rptr. 503, 40 A.L.R.4th 539] [setting forth certain elements indicative of a stable and significant relationship].)

In a contemporary society (and particularly in San Francisco) it is foreseeable a homosexual relationship might exist. Such a relationship may be significant enough to meet the third *Dillon* requirement. " '[F]amily' may 'mean different things under different circumstances. The family, for instance, may be . . . a particular group of people related by blood or marriage, or not related at all, who are living together in the intimate and mutual interdependence of a single home or household. . . .' " (*MacGregor* v. *Unemployment Ins. Appeals Bd., supra,* 37 Cal.3d 205, 212.)

While I dissent from the majority's holding that an intimate homosexual relationship cannot be a significant relationship for stating a cause of action for negligent infliction of emotional distress, I must still concur in the judgment.

As noted in the beginning of this dissent and concurrence the courts must determine what an ordinary man under such circumstance should have reasonably foreseen, thus marking out the areas of liability, excluding the remote and unexpected. (*Dillon* v. *Legg, supra,* 68 Cal.2d 728, 741.) An action for negligent infliction of mental distress will not lie for bad manners or trivialities, but tortious conduct resulting in substantial invasions of clearly protected rights. (*Molien, supra,* at p. 927.) The complaint alleges that appellant was denied entry to a San Francisco Municipal Bus, but his significant other was allowed onto the bus. It is further alleged that the defendant bus driver verbally abused Robert Ervin and struck him. The complaint does not allege that Robert Ervin was physically injured in any manner at all. I simply do not find this conduct by the bus driver, without an allegation that Robert Ervin was injured in some significant manner, would cause an ordinary person to foresee that appellant would suffer any substantial emotional distress. (*Accounts Adjustment Bureau* v. *Copperman* (1984) 158 Cal.App.3d 844, 848 [204 Cal.Rptr. 881].) Recovery for this tort was not meant to cover every situation in which an individual acts improperly, but rather toward tortious conduct resulting in substantial invasions of clearly protected rights.

Since appellant does not plead any medical injury to himself or his significant other, there is nothing in the complaint to support the genuineness of the claim. "The *Molien* court's evolutional reiteration of the *Dillon* foreseeability test for establishing emotional distress is not, however, free of any pleading requirements. Although foreseeability must generally be adjudicat-

ed on a case-by-case basis, *Molien* contemplates that the circumstances of the case will be sufficiently *pleaded* to support the genuineness of the claim. ' "In cases other than where proof of mental distress is of a medically significant nature, [citations] the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case. [Citation.]" ' " (*Id.,* at p. 847, italics added.) Appellant's complaint does not contain any allegations that support the genuineness of the claim.

In conclusion, I disagree that a homosexual relationship cannot be of a significant nature to sustain a cause of action for negligent infliction of emotional distress. However, I concur in the judgment because appellant failed to plead his case in such a manner to support the genuineness of the claim.

A petition for a rehearing was denied July 22, 1987, and appellant's petition for review by the Supreme Court was denied September 17, 1987.