Ruben GARCIA, Appellant,

v.

SAN ANTONIO HOUSING AUTHORITY, Appellee.

No. 04–91–00708–CV.

Court of Appeals of Texas, San Antonio.

June 23, 1993.

Warren Weir, Weir & Alvarado, P.C., San Antonio, TX, for appellant.

John Milano, Jr., Thornton, Summers, Biechlin, Dunham & Brown, Inc., Tim Daniels, Daniels & Daniels, San Antonio, for appellee.

Before BUTTS, PEEPLES and BIERY, JJ.

**ON APPELLANT'S MOTION FOR REHEARING**

PEEPLES, Justice.

Our previous opinion of March 3, 1993, is withdrawn and replaced by the following opinion.

■ In this case we must decide whether Ruben Garcia, an uncle who witnessed his nephew's injury, may recover for his own mental anguish as a bystander. We hold that neither a close personal relationship nor the uncle-nephew relationship without more is sufficient for recovery as a bystander. But we conclude that a relative residing in the injured person's household may recover as a bystander, and we therefore reverse the take-nothing summary judgment.

Ruben brought suit against the San Antonio Housing Authority and six other defendants to recover for mental anguish he suffered when he rescued his nephew Adrian from a fire in the apartment where Adrian and his family lived. Adrian's suit by next friend for his own injuries is not part of this appeal. The trial court rendered a take-nothing summary judgment against Ruben on the ground that an uncle has no standing to seek mental anguish damages as a bystander for injuries suffered by a nephew.[1] Ruben argues that he should be able to recover because he has a close personal relationship with his nephew and is a father figure who lived with the family and who eyewitnessed his nephew's injury and suffering.

Bystander recovery for mental anguish first gained impetus with the decision in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). There the court allowed a mother to recover for mental anguish she suffered upon witnessing the death of her child. The *Dillon* court contemplated that courts would determine duty case-by-case after considering three guidelines:

(1) Whether plaintiff was located near the scene of the accident as contrasted

---

1. We refer to uncles and nephews because that is the relationship involved in this case, but our discussion and holding apply generally to bystander suits by uncles and aunts when their nephews or nieces were injured, and vice versa.

with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.[2]

*Id.* 69 Cal.Rptr. at 80, 441 P.2d at 920. The Texas courts adopted *Dillon* in 1978, calling it the "modern rule." *See Landreth v. Reed,* 570 S.W.2d 486, 489 (Tex.App.—Texarkana 1978, no writ). The supreme court has accepted the *Dillon* guidelines while denying recovery to a stepparent who "did not contemporaneously perceive the accident or otherwise experience the shock of unwittingly coming upon the accident scene." *Freeman v. City of Pasadena,* 744 S.W.2d 923, 924 (Tex.1988). The court later denied recovery for mental anguish to a child who was not at or near the scene where the parent was injured and who did not suffer "direct emotional impact ... from the sensory and contemporaneous observance of the incident, as contrasted with learning of the accident from others" afterward. *Reagan v. Vaughn,* 804 S.W.2d 463, 467 (Tex.1990). The court has again stated its adherence to *Dillon* while holding there is no general cause of action for negligent infliction of emotional distress. *Boyles v. Kerr,* 855 S.W.2d 593, 597–598 (Tex.1993).[3] *Freeman* and *Reagan* show that even the parent-child relationship will not support a mental-anguish recovery if the plaintiff was not a bystander within *Dillon.*

Unlike the plaintiffs in *Freeman* and *Reagan,* Ruben Garcia clearly satisfies the first two *Dillon* factors: he was at the scene and he suffered direct emotional impact from observing the incident firsthand. But the third factor requires a close relationship between the bystander and the injured person, and his relationship to his nephew is biologically distant.

Our courts have denied bystander recovery when the plaintiff had no formal or biological relationship to the injured person. In *Hinojosa v. South Texas Drilling & Exploration, Inc.,* 727 S.W.2d 320 (Tex. App.—San Antonio 1987, no writ), plaintiff had heard his co-worker and close friend fall to his death and land near the area where plaintiff was working. We denied recovery because there was no familial relationship. In *Hastie v. Rodriguez,* 716 S.W.2d 675 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), the plaintiff was a live-in girl friend who witnessed an accident involving her male partner. Plaintiff did not establish common-law marriage, and the court denied recovery because there was no familial relationship. In *Genzer v. City of Mission,* 666 S.W.2d 116 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), the plaintiffs were the grandparents of a child who was injured and died. The court permitted recovery, noting that the grandparents had a close relationship with the child.

■ These cases illustrate that in Texas the *Dillon* requirement of a plaintiff "closely related" to the victim requires a familial relationship of some sort; it is not enough to show a close non-familial rela-

---

**2.** The California Supreme Court has modified the *Dillon* guidelines and replaced them with three somewhat different *elements of proof.*

[A] plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances.

*Thing v. La Chusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 880–81, 771 P.2d 814, 829–30 (1989) (footnotes omitted).

**3.** Courts and scholars have offered thoughtful critiques of bystander recovery and cogent defenses of the view that only plaintiffs who were in the zone of danger can recover. *See Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969) (Breitel, J.); Richard N. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Distress—A Comment on the Nature of Arbitrary Rules,* 34 U.FLA.L.REV. 477 (1982).

tionship, or a distant familial relationship without more. That the relationship must be familial is shown by a recent California Supreme Court decision authored by Justice Mosk, a member of the *Dillon* majority. In *Elden v. Sheldon*, 46 Cal.3d 267, 250 Cal.Rptr. 254, 758 P.2d 582 (1988), the plaintiff had witnessed the tortious injury and death of the woman with whom he had cohabited, whom he termed his "de facto spouse."[4] The court held that the plaintiff did not meet the third *Dillon* requirement—a close relationship. This requirement excludes "friends or distant relatives of the injured person," such as first cousins, and close girl friends who are akin to natural sisters. *Id.* 250 Cal.Rptr. at 256, 758 P.2d at 584. The court disapproved the notion that it is the emotional attachment that counts, not the biological or marital relationship. *Id.* 250 Cal.Rptr. at 256–61, 758 P.2d at 584–88.[5]

The question here is whether the uncle-nephew relationship is enough to justify bystander recovery. To require mere emotional "closeness" would require constant ad hoc line-drawing; courts would have to probe case-by-case the genuineness of the relationship. Presumably when several people were injured, courts would weigh the varying relationships and decide which ones were close enough to justify bystander recovery and which ones were not. We question whether it is in society's interest for courts and litigants to delve into family relationships to this extent. *See Elden v. Sheldon*, 250 Cal.Rptr. at 259, 758 P.2d at 587. And courts must draw a line somewhere. "We may regret that the line was drawn just where it was, but drawn somewhere it had to be." *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 103–04 (1928) (Andrews, J., dissenting). Prosser and Keeton make the same point:

> If [bystander] recovery is to be permitted, however, it is also clear that there must be some limitation. It would be an

entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends.

W. Page Keeton, Et Al., Prosser and Keeton on the Law of Torts, § 54, at 366 (5th ed. 1984). "A 'bright line in this area of the law is essential.' " *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 878, 771 P.2d 814, 827 (1989), quoting *Elden v. Sheldon*, 250 Cal.Rptr. at 260, 758 P.2d at 588.

The California Supreme Court has defined "closely related" to mean "relatives residing in the same household, or parents, siblings, children, and grandparents of the victim." *Thing v. La Chusa*, 257 Cal.Rptr. at 880 n. 10, 771 P.2d at 829 n. 10. This standard sets a reasonably bright line that limits suits to a finite number of relatives while ensuring some degree of closeness by requiring that they reside in the same household. Parents, siblings, children, and grandparents can recover as bystanders even if they did not reside with the injured person; other relatives must prove residence.

We adopt this standard and remand the cause for further proceedings because there is a fact issue whether Ruben is a resident of his sister's household. Residence consists of bodily presence and intention. *See Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.1964); *Alvarez v. Espinoza*, 844 S.W.2d 238, 247 (Tex.App.—San Antonio 1992, no writ). In reviewing this summary judgment, we consider the evidence favorably to the nonmovant. *See Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex. 1990). Though the evidence that Ruben was a good uncle to his sister's children

---

**4.** California has abolished common-law marriages, but recognizes them when they were entered into validly elsewhere. *See* 250 Cal. Rptr. at 259 & n. 5, 758 P.2d at 587 & n. 5.

**5.** The *Elden* court disapproved the suggestion in *Mobaldi v. Regents of University of California,*

55 Cal.App.3d 573, 127 Cal.Rptr. 720 (1976), that the focus under *Dillon* is emotional attachments and not legal status or biological relationships. *See Elden v. Sheldon*, 250 Cal.Rptr. at 256, 260, 758 P.2d at 584, 588.

does not pertain to this standard, the record does not establish as a matter of law that Ruben is not a resident at his sister's apartment.

We hold that mere personal closeness of relationship is, as a matter of law, not sufficient for bystander recovery. But we also hold that Ruben may recover as a bystander if he proves that he was a resident in his sister's apartment. We therefore reverse the judgment and remand for further proceedings.

BUTTS, Justice, dissenting.

I respectfully dissent. The majority opinion states, without qualification: "[W]e also hold that Ruben may recover as a bystander if he proves that he was a resident in his sister's apartment." This is a new basis for bystander recovery in Texas (or any other jurisdiction).

Biological kinship plus residency in the same apartment as the injured relative cannot be the standard on which to base recovery by a bystander plaintiff.

The dreadful burn injuries in this case happened when three-month-old Adrian slept alone in his bed upstairs while Ruben slept downstairs. On the morning of September 15, 1987, Adrian's mother, Leticia Garcia, walked one child to school, leaving her three-year-old and the baby Adrian in the apartment. Ruben was asleep downstairs when the three-year-old awakened him because of the fire. Ruben rushed upstairs where the baby's bed was burning and grabbed the baby, taking him to a neighbor who called for help. The fire department arrived; an EMS ambulance carried Adrian to the hospital; Ruben did not go with the baby in the ambulance, nor did he request to do so. All of the deposition testimony conclusively establishes there was no close emotional familial relationship between Ruben and the baby.

The supreme court delineated the Texas law in *Freeman v. City of Pasadena,* 744 S.W.2d 923 (Tex.1988), by applying the three-prong standard of *Dillon v. Legg,* 68 Cal.2d 728, 740, 441 P.2d 912, 920, 69 Cal. Rptr. 72, 80 (1968):

In determining ... whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Freeman v. City of Pasadena,* 744 S.W.2d at 923–24. While the majority opinion of *Freeman* does not address the legal status of the stepfather there involved because he did not observe the accident, the concurring opinion (Ray, J.) does note that the real purpose of the *Dillon v. Legg* test is to determine whether the plaintiff's injury is *foreseeable,* stating that it is the *emotional attachments of the family relationship and not legal status* that are relevant to foreseeability.

It is plain there must be a strong and close emotional attachment in a familial relationship between the plaintiff and the injured person to establish the basis of recovery for mental anguish, the basis being foreseeability. Was there a duty of due care owed by the San Antonio Housing Authority to the plaintiff Ruben in this case? While it is true that Ruben is the uncle of the injured baby, the summary judgment evidence establishes as a matter of law that no close familial relationship existed. *Elden v. Sheldon,* 46 Cal.3d 267, 250 Cal.Rptr. 254, 758 P.2d 582 (1988), clarified that the legal status of marriage or consanguinity alone is not the only proof needed to satisfy the third prong of *Dillon.* There must still be an emotionally close familial relationship.

The summary judgment evidence established conclusively that Ruben was not an immediate member of the family living on

the premises, nor was he *in loco parentis* to the three-month-old injured baby. There existed no bond to the baby. Ruben stated he helped clean the apartment when he stayed there; he would give his sister some money. He never bought the groceries; he never bathed the baby; nor did he ever change diapers. He never paid household bills. Sometimes he lived with his mother, or another sister, or often his "common-law" girlfriend. He was not listed on the lease of the housing authority. Indeed, under the strict rules of the housing authority Ruben could not be an eligible "resident." The summary judgment evidence established as a matter of law that Ruben was not a resident at the apartment of his sister, Leticia.

However, whether Ruben was a resident of the apartment is not the decisive factor; it is only one factor to consider. It is not a "prong" to determine foreseeability. The majority unnecessarily focuses on residency of an uncle, stating that he may recover if he proves residency at trial. In this case, the deciding "prong" is the lack of an "emotionally close familial relationship." That was what was conclusively established by all the summary judgment evidence, which includes all of the depositions.

Recovery of damages for a bystander's mental anguish cannot be based only on the legal status of a person (here the uncle) who is a resident of the same apartment (which the summary judgment proof indicates he was not). Even if he were shown to be a resident, that would be insufficient as a basis for recovery of damages as a bystander. This plainly is not the criterion for the third prong of *Dillon.*

The majority opinion applies an erroneous standard as the basis of *foreseeability,* which, as noted previously, is the real purpose of the *Dillon* and *Freeman v. City of Pasadena* test. The summary judgment should be affirmed.