679 A.2d 790

Thomas **BLANYAR** and Louise Blanyar, Parents and Natural Guardians of Christopher Blanyar, a Minor, and Thomas Blanyar and Louise Blanyar in Their Own Right, Appellants,

v.

**PAGNOTTI ENTERPRISES, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1995.

Filed June 19, 1996.

270

Richard S. Campagna, Scranton, for appellants.

Patrick J. Murphy, Scranton, for appellee.

Before DEL SOLE, BECK and HUDOCK, JJ.

HUDOCK, Judge:

■ In this case of first impression, we must determine whether the trial court erred as a matter of law in concluding that a minor plaintiff cannot maintain an action for negligent infliction of emotional distress after observing his cousin drown on Appellee's property. After a review of Pennsylvania precedent, several opinions of our trial courts, and decisions in other jurisdictions, we conclude that the trial court properly found no cause of action to exist.[1] Thus, we affirm.

■ In its landmark decision in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979) (plurality), our Supreme Court rejected the prior "zone of danger" concept with regard to recovery of damages for emotional injury caused by witnessing another's death or injury and, in its stead, adopted a test based upon foreseeability. Thus, in order to maintain a claim for negligent infliction of emotional distress, the following three part test, borrowed from the decision of the California Supreme Court in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), must be applied:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. ■ Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

1. The dissent mistakenly characterizes our holding as a pronouncement that a child who witnesses the drowning death of a cousin does not suffer emotional distress. To the contrary, that child undoubtedly suffers emotional distress. As does a person who sees his or her friend killed. As does the stranger who sees a stranger killed. The question is not whether the child who witnessed his cousin drown suffered emotional distress; the question is whether the law should allow for a recovery in money terms for that distress.

*Sinn v. Burd,* 404 A.2d at 685 (*quoting Dillon v. Legg,* 69 Cal.Rptr. at 80, 441 P.2d at 920). It is only the third factor— the relationship between the plaintiff and the injured person— that is at issue in the present case.

In the cases decided after *Sinn v. Burd,* Pennsylvania litigation has centered on the second element of the above test, the contemporaneousness of the observance. In each appellate case discussing this issue, however, the relationship between the victim and the plaintiff has always been that of spouse, parent or child.[2] Indeed, our Supreme Court suggested in *Sinn v. Burd* that only claims by members of the victim's immediate family were considered to be within the third prong of the test. *See Sinn v. Burd,* 404 A.2d at 677 n. 6 (Lead opinion by Nix, J.) ("If plaintiff witnesses the negligent infliction of an injury to a member of his or her immediate family and suffered emotional harm as a result, to deny recovery merely because plaintiff was not subjected to the same risk of injury as his or her spouse, child or parent is unjust."). *Compare Yandrich v. Radic,* 495 Pa. 243, 250, 433 A.2d 459, 462 (Opinion in Support of Affirmance, Nix, J.) (recovery should be allowable "[w]here a parent or close blood relative actually witnesses a traumatic serious injury to a loved one[.]").

▮ Our research discloses no Pennsylvania appellate decision where the term "closely related" has been at issue. In urging this Court to reverse the decision of the trial court below, Appellant refers us to two opinions of trial courts in Pennsylvania and an appellate decision from the state of New Jersey. In arguing that the trial court's dismissal of Appel-

---

**2.** In *Sinn v. Burd, supra,* a count of plaintiffs' complaint included a claim for the resultant injuries suffered by the decedent's sister who herself narrowly escaped injury from the path of the vehicle. Because the trial court determined that she was in the zone of danger, it overruled preliminary objections to that count of the complaint. The defendant did not appeal that part of the decision and, therefore, the high court was not required to consider that relationship in light of the test announced therein. *Id.,* 404 A.2d at 674 n. 2. The same is true for the minor plaintiff in *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 269 n. 1, 516 A.2d 672, 674 n. 1 (1986), who witnessed her sister being struck and fatally injured by a car.

lant's claim should be affirmed, Appellee relies on decisions from the states of California, Washington, and New York which have denied recovery in cases of similar close relationships. Although the decision is not an easy one, we conclude that, given our Supreme Court's narrow construction of the second factor of the *Sinn v. Burd* test, we believe our high court would also narrowly construe this third factor to allow recovery only to a defined class of bystanders, that is, members of the injured person's immediate family.

In the trial court cases cited by Appellant, an action for negligent infliction of emotional distress withstood preliminary objections where the plaintiff was the foster parent of the victim, *Kratzer v. Unger*, 17 D. & C.3d 771 (1981), and where the victim was the fiance of the plaintiff, *Black v. Wehrer*, 74 Wash. Cty. Reports 71 (1994). In both of these cases, however, the trial courts found the nature of the relationship at issue to be closely akin to the type already sanctioned by our appellate courts, that is, natural parent and child, *Kratzer*, at p. 773 ("we do not perceive of a foster parent relationship as being significantly different from that of a natural parent and child for purposes of evaluating the degree of emotional trauma likely to be suffered.... The technical nomenclature ascribed to the relationship is not as important as the closeness of feelings between the participants."), or husband and wife, *Kratzer*, at pp. 772–73 (Although an engaged couple does not have the rich depth of emotional experiences that a husband and wife have we do not perceive the former relationship as being significantly different from that of the latter in regards to evaluating the severity of emotional trauma likely to be suffered by the observer of a serious accident.). In addition, the New Jersey decision cited by Appellant, *Dunphy v. Gregor*, 136 N.J. 99, 642 A.2d 372 (1994), also involved a claim where the plaintiff was the fiance of the victim. In order to recover for negligent infliction of emotional distress, New Jersey law requires proof of a "marital or intimate familial relationship" between the plaintiff and the victim. Although New Jersey precedent had interpreted this term to include only close relatives or immediate family members, the

*Dunphy* court allowed the claim to go forward due to its belief that, "given the widespread reality and acceptance of unmarried cohabitation, a reasonable person would not find the plaintiff's emotional trauma to be 'remote and unexpected.'" *Id.* at 110, 642 A.2d 372 (citation omitted). We need not judge the wisdom of these cases, however, because the relationship at issue in the present case is that of cousins; a relationship that is different in kind from that of parent and child or husband and wife.

The California decision in *Trapp v. Schuyler Construction,* 149 Cal.App.3d 1140, 197 Cal.Rptr. 411 (1983), as cited by Appellee, involves facts similar to the instant matter. In *Trapp,* the minor plaintiffs witnessed their first cousin drown in a swimming pool on the defendant's property. In their complaint the minor plaintiffs alleged that they were the first cousins of the victim with whom they "had a very close emotional attachment [sic]." *Id.* at 1141, 197 Cal.Rptr. 411. It was further alleged that the plaintiffs and the victim "played together often and had a relationship analogous [sic] to a relationship between siblings. Plaintiffs [sic] loved [the victim] as they would their own brother." *Id.* Referring to the decision of the California Supreme Court in *Dillon v. Legg, supra*—the same case relied upon by our Supreme Court in *Sinn v. Burd, supra*—and concluding that the majority of California decisions following *Dillon* had construed the element narrowly, the *Trapp* court saw no reason to extend the test for reasonable foreseeability to first cousins, "family members well beyond the 'immediate' family unit of parents and children." *Id.* at 1143, 197 Cal.Rptr. 411. The *Trapp* court further concluded that "Although appellants alleged that their relationship to the decedent was akin to that of siblings, and for purposes of ruling on the demurrer we accept that, it cannot be said that the respondent, under the ordinary man standard, knew or should have foreseen the quality of the relationship or that appellants, as close friends, cousins and regular playmates of the deceased, would witness the death of their first cousin." *Id. See also Croteau v. Olin Corp.,* 704 F.Supp. 318 (D.N.H.1989), *aff'd,* 884 F.2d 45 (owner of alleged-

ly defective rifle could not maintain claim for negligent infliction of emotional distress upon witnessing injuries to two first cousins after the gun discharged; as a matter of law, first cousins are not "closely related"); *Kately v. Wilkinson,* 148 Cal.App.3d 576, 195 Cal.Rptr. 902 (1983) (complaint for negligent infliction of emotional distress dismissed although victim and plaintiff, who were both fourteen years of age at time of accident, were best friends and plaintiff cared for victim as she would a natural sister).

In *Thing v. LaChusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), the California Supreme Court modified the *Dillon* test and replaced it with three somewhat different elements of proof as to the observation of the injury and the precise type of resultant injury. California has retained, however, the requirement that the plaintiff be closely related to the victim. The *Thing* court defined "closely related" as "relatives residing in the same household, or parents, siblings, children, and grandparents of the victim." Thus, in California, members of the latter group can recover as bystanders even if they did not reside with the injured person; other relatives must prove residence. *See also Kriventsov v. San Rafael Taxicabs, Inc.,* 186 Cal.App.3d 1445, 229 Cal.Rptr. 768 (1986) (claim allowed to proceed where uncle, who lived with nephew in the same household as part of a family unit, observed nephew run over by a car); *Garcia v. San Antonio Housing Authority,* 859 S.W.2d 78 (Tex.App.–San Antonio 1993) (although neither a close relationship nor an uncle-nephew relationship without more is sufficient for recovery, a relative residing in the injured person's household may recover as a bystander).

The decision to narrowly construe the need for a bystander to be closely related to the victim in order to recover for the negligent infliction of emotional distress was perhaps best explained in the recent case of *Trombetta v. Conkling,* 82 N.Y.2d 549, 605 N.Y.S.2d 678, 626 N.E.2d 653 (1993). There the court held that a niece who narrowly missed being hit by a truck that struck and killed her aunt could not recover for the negligent infliction of emotional distress where, although she

and the victim were very close, they were not members of the same immediate family. Despite the niece's testimony that her mother had died when she was eleven and that the victim became a maternal figure in her life who always lived nearby and enjoyed many activities together on a daily basis, the New York Court of Appeals concluded that "[r]ecovery of damages by bystanders for the negligent infliction of emotional distress should be limited only to the immediate family." *Id.*, 605 N.Y.S.2d at 679, 626 N.E.2d at 654 (*quoting Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 N.Y.S.2d 357, 461 N.E.2d 843 (1984)). The Court of Appeals further noted that:

> On firm public policy grounds, we are persuaded that we should not expand the cause of action for emotional injuries to all bystanders who may be able to demonstrate a blood relationship coupled with a significant emotional attachment or the equivalent of an intimate, immediate familial bond.
>
> \*   \*   \*   \*   \*   \*
>
> [W]e have been precise and prudent in resolving tort duties, because the significant expansion of a duty "must be exercised with extreme care, for legal duty imposes legal liability." ... It remains part of this Court's important common-law tradition and responsibility to define the orbits of duty.
>
> \*   \*   \*   \*   \*   \*
>
> In addition to the prevention of unmanageable proliferation of such claims—with their own proof problems and potentiality for inappropriate claims—the restriction of this cause of action to a discrete readily determinable class also takes cognizance of the complex responsibility that would be imposed on the courts in this area to assess an enormous range and array of emotional ties of at times, an attenuated or easily embroidered nature.

*Trombetta*, 605 N.Y.S.2d at 680–681, 626 N.E.2d at 655–656.

We recognize that, unlike Pennsylvania, New York courts have retained the "zone of danger" test and have declined to adopt the guidelines the California Supreme Court established in *Dillon, supra*. Nevertheless, we find their concerns regarding this issue compelling as to any further extension of

the "closely related" standard of *Dillon* as adopted in *Sinn v. Burd, supra.* Moreover, because of the important and far reaching public policy concerns involved, any further extension of recovery for the tort for negligent infliction of emotional distress should come from our Supreme Court. *See Brooks v. Decker,* 343 Pa.Super. 497, 498–500, 495 A.2d 575, 576 (1985), *aff'd,* 512 Pa. 365, 516 A.2d 1380 (1986) (father could not maintain action for negligent infliction of emotional distress when he did not witness injury to son, but rather, arrived at accident scene shortly thereafter; "if law should be changed to allow such a cause of action, that change must come from the Supreme Court."). Finally, although *Brooks* dealt with the restriction of recovery to the contemporaneous observation of the tort, we believe the following comments by our Supreme Court apply equally to an expansion of those entitled to recover beyond the victim's immediate family:

> Were we to accept appellant's argument and hold actionable all emotional trauma causally connected to the defendant's tortious conduct, we would [wreak] upon our society a problem of unlimited or unduly burdensome liability. The criteria set forth in *Sinn v. Burd, supra,* serve as a balance between a policy of total denial of all such claims for the negligent infliction of emotional distress and a policy of recovery for all who suffer emotional injury, regardless of their proximity to the accident.

*　　*　　*　　*　　*　　*

> While we do not doubt that appellant has sustained feelings of helplessness, anger, and frustration, we must once again proclaim that the common law has traditionally denied a damage award for the bereavement and grief caused by the fact of injury to another.

*Id.,* 516 A.2d at 1382–83 (citations omitted). *See also Kately,* 195 Cal.Rptr. at 906 ("this strict construction of the second guideline articulated in *Dillon* persuades us that the third guideline should be equally strictly construed.").

■ When considering the appropriateness of the trial court's grant of a demurrer, this Court applies the same standard employed by the trial court:

> The material facts set forth in the complaint as well as all inferences reasonably deducible therefrom must be admitted as true. The court must determine from the facts averred, whether the law says with certainty that no recovery is possible. If doubt exists whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.

*Smith v. Weaver*, 445 Pa.Super. 461, 465–66, 665 A.2d 1215, 1217 (1995). In the present case the only averment in Appellants' complaint regarding the relationship between the minor plaintiff and the victim is as follows: "6. Plaintiff and his cousin Derrick Hittinger, (Derrick) a minor of approximately the same age as plaintiff, were very close friends." Taken as true, this averment is an insufficient basis for recovery for the tort of negligent infliction of emotional distress as a matter of law. The plaintiff is not a member of the victim's immediate family, and, in the alternative, even were we to accept the modified definition of "closely related" in *Thing, supra*, there is no averment that the boys lived together as a family unit. Thus, the trial court did not err in granting Appellee's preliminary objections in the nature of a demurrer and dismissing the complaint.

Order affirmed.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting.

Today, the Majority concludes as a matter of law that a child who witnesses the death of a cousin does not suffer emotional distress.[1] Because I cannot agree no emotional harm would be suffered, I must dissent.

---

1. My characterization of the majority's decision is based on its result— no possibility of compensation. In footnote one, the majority concedes that the plaintiff "undoubtedly suffer[ed] emotional distress." The majority poses the question as "whether the law should allow for a

Appellants brought a claim for negligent infliction of emotional distress on behalf of their child. They claimed that the harm was occasioned when the boy witnessed his cousin drown on Appellee's property, as a result of Appellee's negligence. Appellee filed preliminary objections, contending that the nature of the relationship between the boys was not sufficient to support the cause of action. The trial court granted a demurrer and dismissed the claim, holding that, as a matter of law, the relationship of cousin is not sufficient to satisfy the requirements for a claim of negligent infliction of emotional distress.

In *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979) our Supreme Court rejected the prior "zone of danger" concept and adopted one based on foreseeability, making clear that a cause of action for negligent infliction of emotional distress must be addressed in terms of foreseeability. "Foreseeability enters into the determination of liability in determining whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant." 486 Pa. at 170, 404 A.2d at 684. The court discussed with approval three factors the California Supreme Court identified in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) as necessary to determine whether the plaintiff's injury was reasonably foreseeable, only one of which concerns us:[2] (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *Id.*, 404 A.2d at 685. The Court concluded that an evaluation of these factors will determine foreseeability. For instance, it is obvious that a defendant is more likely to foresee emotional harm to a parent who observes an

recovery in money terms for that distress." The majority answers no. I ask, why not?

**2.** The other two factors are (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. We will not discuss these factors because Appellee raised only the relationship issue.

accident to a child, than to a stranger who witnesses the same incident.

Given this test of foreseeability, I cannot say that cousins do not enjoy a sufficient familial relationship that precludes recovery. This relationship initially satisfies one factor of the test to the degree that the issue should proceed, and not be determined as a matter of law.

Appellants should be afforded the opportunity to present the case to a jury, which will ultimately determine what injuries, if any, where inflicted; whether the harm to this plaintiff was foreseeable; and whether the personal relationship of these cousins was sufficient to support the claimed emotional distress. Jurors are capable of deciding if the harm claimed is legitimately supported by the event surrounding the accident, and the relationship between the plaintiff and victim.

Since the Majority refuses to allow the issue to proceed, I dissent.