686 A.2d 830

**Mary TURNER and Patrick Turner, Her Husband, Appellant,**

**v.**

**The MEDICAL CENTER, BEAVER, PA, INC.**

Superior Court of Pennsylvania.

Argued Oct. 31, 1996.

Filed Dec. 19, 1996.

646

William S. Schweers, Jr., Pittsburgh, for appellants.

Louis C. Long, Pittsburgh, for appellee.

Before TAMILIA, JOHNSON and BROSKY, JJ.

TAMILIA, Judge:

Mary Turner and her husband, Patrick Turner, take this appeal from the April 16, 1996 Order sustaining the preliminary objections in the nature of a demurrer of appellee/The Medical Center, and dismissing appellants' complaint seeking recovery for negligent infliction of emotional distress.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint as failing to set forth a cause of action upon which relief can be granted under any theory of law. *McCaskill v. Philadelphia Housing Authority,* 419 Pa.Super. 313, 615 A.2d 382 (1992). On appeal from an Order sustaining preliminary objections in the nature of a demurrer, this Court must accept as true all well-pleaded facts and all reasonable inferences deducible therefrom, and may reverse the trial court only if there has been an error of law or a manifest abuse of discretion. *Miller v. Peraino,* 426 Pa.Super. 189, 626 A.2d 637 (1993).

In plaintiffs' complaint it is averred that on December 20, 1993, Mary Turner (appellant) accompanied her sister, Shirley Korey, to appellee/hospital for the purpose of inducing the delivery of Korey's previously determined lifeless, 22–week fetus. At approximately 7:30 a.m. that morning, Dr. Mark W. McCormick, M.D., administered Pitocin intravenously and inserted a vaginal suppository to induce labor. According to appellants, at about 11:00 a.m., Dr. William Rumbach administered a second labor-inducing vaginal suppository and informed appellant and her sister that he and Dr. McCormick would be leaving the hospital at noon and Dr. James A. Crozier would be on call and available for further assistance. At approximately 1:30 p.m., Mrs. Korey began to experience severe contractions and purportedly promptly notified a nurse. One-half hour later, Mrs. Korey began to bleed vaginally and once again notified the nurse. Finally, around 3:00 p.m., appellant avers she called a nurse who proceeded to stand in the doorway of the room and watch passively as appellant assisted her sister in delivering the fetus without medical assistance. As the result of this incident, appellant alleges she has sustained the following injuries: depression, anxiety, nightmares, post-traumatic stress syndrome and psychological harm. She also alleges she has sustained the following damages: pain, suffering, anxiety, emotional distress, lost wages, a disability, reduced earnings capacity, etc.[1] The plaintiffs sought damages in excess of $25,000.

On appeal to this Court, appellants claim the facts averred in their complaint clearly established a prima facie case of negligent infliction of emotional distress. Specifically, appellant/wife contends as a result of the negligent actions of appellee, she is entitled to recover under Pennsylvania's "bystander rule" as she was located at the scene of the negligent act, her shock resulted from her contemporaneous observance and direct involvement in the incident, and she is closely

---

1. Appellant's husband, Patrick Turner, joined the complaint alleging loss of consortium and the incurrence of medical expenses as a result of wife's alleged injuries.

related to the victim. See *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979).

In *Sinn,* our Supreme Court, in rejecting the prior "zone of danger" concept and adopting one based on foreseeability, made it clear that a cause of action for negligent infliction of emotional distress must be addressed in terms of foreseeability. "Foreseeability enters into the determination of liability in determining whether the emotional injuries sustained by the plaintiff were reasonably foreseeable to the defendant." *Id.* at 169, 404 A.2d at 684. The *Sinn* Court adopted the following three-part test from a California Supreme Court decision, *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), to determine whether the plaintiff's injury was reasonably foreseeable.

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Sinn, supra* at 170, 404 A.2d at 685, quoting *Dillon, supra* at 739–41, 69 Cal.Rptr. at 80, 441 P.2d at 920. In the matter before us, the trial court determined what allegedly happened to appellant was not foreseeable by appellee. Specifically, the trial court reasoned appellant "was merely accompanying her sister when she allegedly experienced trauma as a result of her sister's condition and experience while in the Defendant hospital and that trauma resulted in depression and post-traumatic stress syndrome. Plaintiff herself did not seek nor receive any medical treatment from Defendant." (Slip Op., Mannix, J., 4/16/96, p. 2.) Thus, the trial court found appellee owed no duty to appellant. A more recent Pennsylvania Superior Court case elaborated on the *Sinn* discussion and reasoned:

The basis of recovery for a claim of negligent infliction of emotional distress is the traumatic impact of viewing the negligent injury of a close relative. A person who does not experience a sensory and contemporaneous observance of the injury does not state a cause of action for negligent infliction of emotional distress. In formulating the rule, the Supreme Court "contemplated a discrete and identifiable traumatic event to trigger recovery." In the absence of such an event, no recovery is permitted.

*Love v. Cramer,* 414 Pa.Super. 231, 233–35, 606 A.2d 1175, 1177 (1992), (citations omitted), alloc. denied, 533 Pa. 634, 621 A.2d 580 (1992).

 Applying the standards set forth above, it is clear appellant has set forth a valid cause of action for negligent infliction of emotional distress. In her complaint appellant averred she sat at her sister's hospital bedside for approximately 7–1/2 hours, from the time Dr. McCormick administered the labor-inducing medication at 7:30 a.m. until she helped her sister deliver the dead fetus in that same room, without medical assistance, at 3:00 p.m. Appellant also alleged her physical and mental injuries were caused by her contemporaneous observance of and direct involvement with the delivery. Specifically, she watched helplessly as her sister experienced severe contractions, followed by vaginal bleeding, and her horror culminated as their pleas for medical assistance were ignored and she was forced to help Korey deliver her dead fetus.

 Appellee contends appellant failed to allege the observance of an identifiable traumatic incident, since a "buffer" existed which lessened the affect of this incident. See *Bloom v. Dubois Regional Medical Center,* 409 Pa.Super. 83, 597 A.2d 671 (1991). According to appellee, appellant voluntarily accompanied her sister to the hospital, knowing she would be delivering a still-born fetus, thereby willingly placing herself in this emotionally-charged position. This Court, however, finds no merit to appellee's argument. While appellant did voluntarily accompany her sister to the hospital, she certainly

did not anticipate or acquiesce to actually helping her sister deliver the fetus without medical assistance or supervision. Appellant presumed she was there for emotional support and comfort only, not to perform the delivery. Furthermore, this Court cannot agree with appellee's contention child-delivery, in and of itself, is not a traumatic event, let alone the unsupervised delivery of one's sister's still-born fetus. Appellee relies on *Mazzagatti v. Everingham by Everingham*, 512 Pa. 266, 516 A.2d 672 (1986) in support of its "buffer" claim. We find such reliance misplaced. In *Mazzagatti*, minutes after receiving a telephone call informing her her daughter was in an automobile accident, the mother arrived at the scene of the accident and observed her daughter lying on the road. Choosing not to extend liability in this situation, this Court stated "the close relative's prior knowledge of the injury to the victim serves as a buffer against the full impact of observing the accident scene." *Id.* at 279, 516 A.2d at 679. Here, however, appellant is not alleging the actual delivery of the still-born fetus was the negligent act which caused her injuries, but rather argues it was the hospital's failure to respond to their requests for medical assistance, forcing her to assist in the delivery, which caused her injuries.

■ This Court also finds the relationship between appellant and her sister to be that of a "close relative", sufficient to sustain her claim pursuant to *Sinn*. Claiming sisters are not "closely related", appellee relies on the recent decision of *Blanyar v. Pagnotti Enterprises, Inc.*, 451 Pa.Super. 269, 679 A.2d 790 (1996), which held recovery in emotional distress cases is limited to members of the injured person's immediate family and does not extend to a minor plaintiff who brought an action for negligent infliction of emotional distress arising from witnessing the drowning death of his cousin. The *Blanyar* Court, after conducting a thorough review of Pennsylvania caselaw as well as that of other jurisdictions, determined "closely related" could not be expanded to include cousins, despite any emotional attachment. The *Blanyar* Court also noted that in each appellate case discussing this issue, the relationship between the victims and the plaintiff always has

been limited to that of spouse, parent or child. While no Pennsylvania caselaw addressing the negligent infliction of emotional distress has defined the term "immediate family", we note the Supreme Court in *Sinn* did require the plaintiff and the victim be "closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Id.* at 171, 404 A.2d at 685. Here, appellant is both a blood relative and close family member. Nothing in the *Blanyar* Opinion persuades this Court that "closely related" should be limited to a spouse, parent or child.[2]

Finally, we find the rationale followed by the trial court in dismissing this action to be flawed in several respects. First, the fact appellant voluntarily accompanied her sister to the hospital is irrelevant. Under this theory, the bystander rule would never apply to a close relative who willingly chooses to be with a sick or injured relative for the purpose of emotional support. See *Love, supra* (daughter volunteered to sit by her mother's side as mother died due to alleged misdiagnosis on the part of medical doctors). Secondly, the fact appellant/wife was not seeking medical treatment from the hospital is likewise of no consequence insofar as the foreseeability of her injuries is concerned. Finally, appellant did more than simply "accompany" her sister to the hospital. Her forced participation in a traumatic delivery of a dead fetus due to lack of proper attention from trained hospital personnel carries this case beyond the parameters of the bystander rule and requires us to find that when a relative would otherwise be a bystander in a situation where the trauma is foreseeable, the foreseeable forced participation in a traumatic event, due to negligence of the defendant, supplies the missing element necessary to find a prima facie case of emotional distress. The routine nature of delivery of a child in today's society is the result of modern medical practices which have dramatical-

---

2. We note *Blanyar v. Pagnotti Enterprises, Inc.*, 451 Pa.Super. 269, 679 A.2d 790 (1996), citing *Thing v. La Chusa*, 48 Cal.3d 644, 668, 257 Cal.Rptr. 865, 880, 771 P.2d 814, 829 (1989), acknowledges the California Supreme Court definition of "closely related" as "relatives residing in the same household, or parents, *siblings*, children, and grandparents of the victim." *Blanyar* at 276, 679 A.2d at 793 (emphasis added).

ly reduced the number of deaths to mothers and fetuses. It is precisely these life-saving supports which were denied appellant's sister causing her to be a forced participant in a procedure for which she had neither experience nor training. It placed her sister in danger and unquestionably caused emotional distress in appellant.

Accordingly, after reviewing all of the circumstances surrounding appellant's claim and applying the test set forth in *Sinn,* we find, based on the facts averred, appellee could have foreseen the injuries allegedly sustained by appellant and the trial court erred by sustaining appellee's preliminary objections in the nature of a demurrer. We therefore reverse the Order of the trial court and remand this matter for proceedings consistent with this Opinion.

Order reversed and remanded.

Jurisdiction relinquished.