## Zentz v. Harne

*Boyd Spencer,* for plaintiffs.
*Louis Schmitt Jr.,* for defendant.

GEARY, *J.,* June 21, 2007—This case comes before us on preliminary objections to plaintiffs' second amended complaint filed by defendant, Mary Ann Harne. On January 22, 2007, we entered an order denying Ms. Harne's preliminary objection in the nature of a demurrer. We now write to state the rationale for our decision.

In what appears to be a case of first impression in Pennsylvania, we are asked to determine whether a stepson may bring an action for negligent infliction of emotional distress after witnessing an accident in which his stepfather was severely injured. For the reasons stated herein, we hold that a stepparent/stepchild relationship can serve as the basis for a negligent infliction of emotional distress cause of action when it is established that the stepparent stands in loco parentis to the stepchild.

This case arises from a motor vehicle accident that occurred on June 26, 2004 on Route 56 in Ogle Township, Somerset County, Pennsylvania. Plaintiff, Zachary S. Zentz was riding his Yamaha motorcycle westbound on Route 56 behind another motorcycle ridden by Gregory Warner. Mr. Warner was riding his motorcycle behind another motorcycle ridden by Ms. Harne. Ms. Harne lost control of her motorcycle, crossed the centerline and grazed the left rear side of a pickup truck driven eastbound on Route 56 by defendant, Anthony Koposko. After Ms. Harne grazed Mr. Koposko's truck, the truck swerved into the westbound lane and struck Mr. Zentz's motorcycle, causing him extensive physical injury.

Plaintiff, Mrs. Roni Zentz and minor-plaintiff Benjamin Black witnessed the accident while riding in a ve-

hicle driven by Mrs. Zentz that was following directly behind the motorcycle operated by Mr. Zentz. Benjamin is the stepson of Mr. Zentz. His biological father, Thomas Black, and his mother separated in 1992 and were divorced in 1996. Benjamin was 1 year old when his natural father left. Mr. and Mrs. Zentz married in 1997 and Benjamin has lived with his mother and Mr. Zentz since. For the past nine years Benjamin and Mr. Zentz have resided in the same household and have developed a relationship akin to that of a father and son.

Among other claims made by the plaintiffs, Benjamin filed an action against Ms. Harne for negligent infliction of emotional distress. Ms. Harne filed a preliminary objection in the nature of a demurrer asserting that, as a matter of law, the stepfather/stepson relationship between Mr. Zentz and Benjamin is insufficiently close to support an action for negligent infliction of emotional distress.

We begin our analysis by stating the applicable standard of review. The Pennsylvania Rules of Civil Procedure provide that any party may file preliminary objections to any pleading. Pa.R.C.P. 1028(a). Preliminary objections should be sustained only when the law will not permit a remedy, "and where any doubt exists, that doubt should be resolved by a refusal to sustain the preliminary objections." *P.J.S. v. Pennsylvania State Ethics Commission,* 669 A.2d 1105, 1108 (Pa. Commw. 1996). The Pennsylvania Supreme Court has set the standard of review for granting preliminary objections in the nature of a demurrer as follows:

"All material facts set forth in the [pleading at issue] as well as all inferences reasonably deducible therefrom

are admitted as true. The question presented by the demurrer is whether, on the facts as averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Corestates Bank N.A. v. Cutillo,* 723 A.2d 1053, 1057 (Pa. Super. 1999), citing *Mahoney v. Furches,* 503 Pa. 60, 66, 468 A.2d 458, 461-62 (1983).

The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Bourke v. Kazaras,* 746 A.2d 642 (Pa. Super. 2000), *appeal denied,* 564 Pa. 722, 766 A.2d 1242 (2000).

"The basis of recovery for a claim of negligent infliction of emotional distress is the traumatic impact of viewing the negligent injury of a close relative." *Love v. Cramer,* 414 Pa. Super. 231, 234, 606 A.2d 1175, 1177 (1992). "[A] cause of action for negligent infliction of emotional distress must be addressed in terms of foreseeability." *Turner v. Medical Center, Beaver, PA Inc.,* 454 Pa. Super. 645, 650, 686 A.2d 830, 832 (1996). We are to apply the following three-part test to determine whether a plaintiff's injuries were reasonably foreseeable by the defendant:

"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were

closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Sinn v. Burd,* 486 Pa. 146, 170-71, 404 A.2d 672, 685 (1979), quoting *Dillon v. Legg,* 69 Cal. Rptr. 72, 80, 441 P.2d 912, 920 (1968).

At issue in the instant case is whether a stepfather/stepson relationship can be deemed sufficiently close to meet the "closely related" standard set forth in the third prong of the test established in *Sinn.*[1] Citing *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 633 A.2d 605 (1993), Ms. Harne argues that the tort of negligent infliction of emotional distress exclusively applies to those who observe injury to "close family members"; and because Mr. Zentz does not stand in any legally recognized family relationship to Benjamin, he cannot, as a matter of law, be deemed a "close family member." Ms. Harne further asserts that, as a matter of policy, Pennsylvania should limit negligent infliction of emotional distress claims to those involving "close, legally recognized" family relationships because to do otherwise is to invite a flood of claims to be filed by persons whose relationships to the injured are more remote than that which exists in the instant case.

Benjamin counters that we should look beyond the legal relationship between two people in determining whether persons are closely related; we should also consider the nature of the relationship. Specifically, Benjamin asserts that, although Mr. Zentz is not his natural or

---

1. Ms. Harne does not challenge the sufficiency of the complaint with respect to the first two prongs of the *Sinn* test.

adoptive father, Mr. Zentz has stood in loco parentis to him for nearly 10 years and it is the nature of that relationship between them that makes them close. Finally, Benjamin argues that the "flood of claims" argument made by Ms. Harne has already been considered and rejected by the Supreme Court in *Sinn v. Burd.*

There are but a few appellate cases in Pennsylvania that purport to describe what constitutes "closely related" for purposes of the test established in *Sinn.* The spectrum spans from the acceptance of a mother/child relationship in *Sinn* and a sister/sister relationship in *Turner v. Medical Center, Beaver, PA Inc.,* 454 Pa. Super. 645, 686 A.2d 830 (1996), to the rejection of a cousin relationship in *Blanyar v. Pagnotti Enterprises Inc.,* 451 Pa. Super. 269, 679 A.2d 790 (1996).

In *Sinn,* a mother witnessed her minor daughter being struck and killed by an automobile. The court held that a mother/child relationship satisfies the "closely related" standard, but the court defined "closely related" only insofar as it contrasted it with situations in which no relationship or only a distant relationship exists. *Sinn,* at 172, 404 A.2d at 685. Indeed, the court specifically declined to address what other relationships may fall within the "closely related" standard.

"As stated earlier, see note 15, we need not here consider the case where the mother is notified of the accident by another. Nor do we consider the situation where the relationship between the plaintiff-bystander and the accident victim is more remote. These are questions which may properly be left for another day. Jurisprudentially, the remote and unexpected can best be excluded by

reaching these issues on a more appropriate record." *Id.* at 173 n.21, 404 A.2d at 686 n.21.

In *Blanyar v. Pagnotti Enterprises Inc.,* 451 Pa. Super. 269, 679 A.2d 790 (1996), a child witnessed the drowning death of his cousin. At issue was whether a cousin relationship could serve as the basis of a claim for negligent infliction of emotional distress. Noting that a Pennsylvania appellate court had not yet addressed the "closely related" standard, the court reasoned that the standard should be narrowly construed to include only persons who are members of the injured person's immediate family.

"Our research discloses no Pennsylvania appellate decision where the term 'closely related' has been at issue . . . . Although the decision is not an easy one, we conclude that, given our Supreme Court's narrow construction of the second factor of the *Sinn v. Burd* test, we believe our high court would also narrowly construe this third factor to allow recovery only to a defined class of bystanders, that is, members of the injured person's immediate family." *Id.* at 272-73, 679 A.2d at 791.

The court then went on to note that the California Supreme Court defined "closely related" in a similar manner, limiting actionable claims to those involving "relatives residing in the same household, or parents, siblings, children and grandparents of the victim." *Id.* at 275, 679 A.2d at 793, quoting *Thing v. LaChusa,* 48 Cal.3d 644, 257 Cal. Rptr. 865, 771 P.2d 814 (1989).

Applying the "immediate family" standard to the facts before it, the *Blanyar* court held that a cousin relationship

cannot serve as the basis of a claim for a negligent infliction of emotional distress.

"In the present case the only averment in appellants' complaint regarding the relationship between the minor plaintiff and the victim is as follows: '(6) Plaintiff and his cousin Derrick Hittinger, a minor of approximately the same age as plaintiff, were very close friends.' Taken as true, this averment is an insufficient basis for recovery for the tort of negligent infliction of emotional distress as a matter of law. The plaintiff is not a member of the victim's immediate family, and, in the alternative, even were we to accept the modified definition of 'closely related' in *Thing, supra,* there is no averment that the boys lived together as a family unit." *Id.* at 278, 679 A.2d at 794.

Six months after the decision in *Blanyar,* a different panel of the Superior Court addressed the issue in *Turner v. Medical Center, Beaver, PA Inc., supra,* a case involving a plaintiff who was forced to witness her sister vaginally deliver a lifeless fetus without medical assistance. Faced with the question of whether siblings are "closely related", the court's analysis followed a decidedly different track than did the *Blanyar* court. Rather than adopt the "immediate family" standard set forth in *Blanyar,* the court focused on the contrasting language used in *Sinn.*

"While no Pennsylvania case law addressing the negligent infliction of emotional distress has defined the term 'immediate family', we note the Supreme Court in Sinn did require the plaintiff and the victim be 'closely related, as contrasted with an absence of any relationship

or the presence of only a distant relationship.' (internal citation omitted) Here, appellant is both a blood relative and close family member. Nothing in the *Blanyar* opinion persuades this court that 'closely related' should be limited to a spouse, parent or child. [FN2]

"FN2. We note *Blanyar v. Pagnotti Enterprises Inc.,* 451 Pa. Super. 269, 679 A.2d 790 (1996), citing *Thing v. LaChusa,* 48 Cal.3d 644, 668, 257 Cal. Rptr. 865, 880, 771 P.2d 814, 829 (1989), acknowledges the California Supreme Court definition of 'closely related' as 'relatives residing in the same household, or parents, *siblings,* children, and grandparents of the victim.' *Blanyar* at 276, 679 A.2d at 793. (emphasis added)" *Turner* at 653, 686 A.2d at 833-34.

Because our Supreme Court has not defined "closely related" and different panels of the Superior Court have seemingly taken divergent approaches to resolving the issue, we are left with no concrete guidance to look to in deciding whether a stepfather/stepson relationship, by itself, is sufficiently close to meet the "closely related" standard. With that said, we note that it is beyond question that a parent may seek damages for negligent infliction of emotional distress when forced to witness the injury of his or her child. We believe the principles that permit recovery in that situation apply equally to situations in which the roles are reversed. That is to say, we find it reasonably foreseeable that a child may sustain emotional injury if forced to witness the injury of a parent; this is particularly evident when one considers that children are generally less emotionally equipped to cope with such a tragedy than are adults.

Because we find it foreseeable that a child may sustain emotional injury under such circumstances, we need not resolve the issue of whether a stepfather/stepson relationship, by itself, satisfies the "closely related" test. Rather, we believe the focus of our analysis must shift to whether Mr. Zentz and Benjamin shared a "parent/child" relationship with one another for purposes of Benjamin's negligent infliction of emotional distress claim.

No Pennsylvania appellate court has defined the terms "parent" or "child" in the context of a negligent infliction of emotional distress claim. However, our Supreme Court has recently considered the matter in the context of a child custody action. In *Peters v. Costello,* 586 Pa. 102, 891 A.2d 705 (2005), the court addressed whether a nonbiological grandparent who has stood in loco parentis to one of the parents of a child has standing to seek contact with that child under the Grandparent Visitation Act, 23 Pa.C.S. §§5311-13. The court's analysis of the issue included an examination of the following definitions of "grandparent" and "parent":

"On the specific point at issue, however, we note that the statute does not define the term 'grandparent.' . . . In construing the term, this court must look to the 'common and approved usage' of the term 'grandparent.' . . . Webster's Third New International Dictionary defines 'grandparent' as 'a parent's parent.' . . . The same dictionary defines 'parent' as follows: '1a: one that begets or brings forth offspring: Father, Mother; b[law] (1): a lawful parent *(2): a person standing in loco parentis although not a natural parent. . . .'* See also, The Merriam Webster Dictionary (1997), 535 (defining 'parent' as '1: one that begets or brings forth offspring: FATHER, MOTHER[;]

*2: one who brings up and cares for another')." Id.* at 115, 891 A.2d at 713. (internal citations omitted) (emphasis in original)

Adopting the above as the common definitions of the terms "grandparent" and "parent", the court concluded that because the "appellees stand in loco parentis to [the mother of the child], they are the parents of [the child's] mother, and therefore, [the child's] grandparents." *Id.*

Although the *Peters* court adopted the above definition of "parent" in the context of a custody case, we find this definition to be a generally valid one. The definition takes into consideration that there are a growing number of nontraditional families within society today in which children are parented by someone other than a biological or adoptive parent. More importantly, it recognizes that there is more to being a parent than the biological or legal relationship one shares with a child; there is also the care and affection one provides that child. Thus, for purposes of our inquiry in the instant case, we will rely on the definition of "parent" adopted by the *Peters* court.[2]

We now turn to the alleged relationship in the instant case. As already noted, Benjamin does not allege that Mr. Zentz is his biological or adoptive father. Rather, he asserts that Mr. Zentz stands in loco parentis to him. Our Supreme Court has defined in loco parentis this way:

---

2. We acknowledge that the *Peters* court expressly noted that the in loco parentis doctrine has been invoked "almost exclusively in matters of child custody." *Peters* at 111 n.1, 891 A.2d at 710 n.1.

"The phrase in loco parentis refers to a person who puts himself in the situation of the lawful parent by assuming the obligations incident to the parental relationship without going through the formality of legal adoption. The status of in loco parentis embodies two ideas; first, the assumption of the parental status, and, second, the discharge of parental duties." *Commonwealth ex rel. Morgan v. Smith,* 429 Pa. 561, 565, 241 A.2d 531, 533 (1968).

The plaintiffs' first amended complaint alleges that: Mr. Zentz and Benjamin's mother, Roni Zentz, are married; Mr. Zentz, Mrs. Zentz and Benjamin have resided together since 1997; Mr. Zentz has developed a fatherly relationship with Benjamin; and Benjamin has had almost no contact with his natural father since 1992. Accepting all of the plaintiffs' averments, and the reasonable inferences therefrom, as true, we are satisfied that the complaint sets forth sufficient facts to support a finding that Mr. Zentz stands in loco parentis to Benjamin. We, therefore, conclude that the alleged relationship between Benjamin and Mr. Zentz is sufficiently close to meet the "closely related" standard. Thus, Ms. Harne's preliminary objection in the nature of a demurrer must be denied.

As a final matter, we address Ms. Harne's policy argument that Pennsylvania should limit negligent infliction of emotional distress claims to those involving "close, legally recognized" family relationships because the absence of such a limitation will invite a flood of claims from parties who have lesser relationships. We note initially that we believe an in loco parentis relationship is a close, legally recognized family relationship. Furthermore, we are persuaded by Benjamin's assertion that

410

the Supreme Court has already rejected the "flood of litigation" policy argument. In *Sinn,* the court addressed the argument in the context of their decision to allow bystander recovery. As the court noted:

"[T]he fundamental concept of our judicial system [is] that any [caseload] increase should not be determinative or relevant to the availability of a judicial forum for the adjudication of impartial individual rights. 'It is the business of the law to remedy wrongs that deserve it, even at the expense of a "flood of litigation"; and it is a pitiful confession of incompetence on the part of any court of justice to deny relief upon the ground that it will give the courts too much work to do.' We obviously do not accept the 'too much work to do' rationale." *Sinn, supra* at 163, 404 A.2d at 681. (internal citation omitted)

We find the above principles clearly applicable to Ms. Harne's policy argument and we reject the argument on that basis.